IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT RODRIGUEZ,<br><br>             Plaintiff,<br><br>     vs.<br><br>PRAXAIR DISTRIBUTION, INC.,<br><br>             Defendant.<br>_____/ | CASE NO. CV-F-04-6218 LJO<br><br>**SUMMARY JUDGMENT DECISION**<br>(Doc. 16.) |

# **INTRODUCTION**[1]

Defendant Praxair Distribution, Inc. ("Praxair") seeks summary judgment/adjudication on plaintiff Robert Rodriguez' ("Mr. Rodriguez'") employment discrimination, termination and failure to rehire claims on grounds they are barred by a release which Mr. Rodriguez signed and lack supporting evidence. This Court considered Praxair's summary judgment/adjudication motion on the record[2] and without oral argument or the February 10, 2006 hearing, pursuant to this Court's Local Rule 78-230(h). For the reasons discussed below, this Court GRANTS Praxair summary judgment.

---

[1] Pursuant to 28 U.S.C. § 636(c) and F.R.Civ.P. 73, the parties consented to proceed before a United States Magistrate Judge, and by a January 20, 2006 order, this action was assigned to United States Magistrate Judge Lawrence J. O'Neill for all further proceedings.

[2] This Court carefully reviewed and considered all argument, points and authorities, declarations, depositions, exhibits, statements of undisputed facts and responses thereto, objections and other papers filed by the parties. Omission of reference to an argument, document, paper or objection is not to be construed to the effect that this Court did not consider the argument, document, paper or objection. This Court thoroughly reviewed and considered the evidence it deemed admissible, material and appropriate for summary judgment/adjudication.

# BACKGROUND

## Mr. Rodriguez' Employment With Praxair

Praxair supplies atmospheric, process and specialty gasses, high-performance coatings, and related services and technologies. In his declaration and complaint,[3] Mr. Rodriguez notes that, in 1988, he began as a dock worker for a Praxair predecessor and received successive promotions with increased responsibilities along with favorable performance reviews. Mr. Rodriguez further notes that beginning in 1998, he was assigned demanding inventory and parts numbering projects and claims that in 2001 his work was "overwhelming" to cause him to smoke more and to develop insomnia.

As of 2002, Mr. Rodriguez was a cylinder inventory analyst with Praxair. Mr. Rodriguez claims that in early 2002, he experienced "overwhelming stress and anxiety," constant focus on work, coping difficulty, and sleep and concentration difficulties and believed he "knew he couldn't function anymore." Mr. Rodriguez claims that he began "to fear looking at e-mails or answering phones." According to Mr. Rodriguez, his physicians removed him from work during March-September 2002, and he was diagnosed with severe depression.

Mr. Rodriguez declares that he "wanted to continue my career with Praxair and wanted desperately to come back to work." Mr. Rodriguez notes that in August 2002, he met with Praxair managers, including Dena Singleton ("Ms. Singleton"), a human resources director, to indicate he "would be willing to work 8 to 10 hours a day, but []was not going to miss any more vacation or work evenings and weekends as a normal part of his work week. [Mr. Rodriguez] asked for an accommodation that would allow him to accomplish his tasks within a reasonable time frame." According to Mr. Rodriguez, on September 16, 2002, Ms. Singleton informed Mr. Rodriguez that Praxair "had no legal obligation to take him back, and that [he] would have to go on long term disability. [Mr. Rodriguez] was told that after he obtained a doctor's release to return to work, he was welcome to reapply for a position, and if one was available, they may rehire him."

The complaint alleges that on September 20, 2002, Ms. Singleton left Mr. Rodriguez a message

---

[3] Mr. Rodriguez proceeds on his first amended complaint, which he filed on July 6, 2004 before his state court action was removed to this Court. For convenience, Mr. Rodriguez' first amended complaint will be referred to as his "complaint."

"saying there was an opportunity for him." The complaint further alleges that in October 2002, Dave Wilson ("Mr. Wilson"), Mr. Rodriguez' former supervisor and Praxair's hard goods director, offered Mr. Rodriguez a position and "said he would call [Mr. Rodriguez] back after speaking with Dena Singleton. An offer was then never furnished to [Mr. Rodriguez]. He was denied employment, and did not receive any accommodation."

**The General Release**

In connection with severance of his Praxair employment, Praxair paid Mr. Rodriguez $23,000,[4] and Mr. Rodriguez signed a General Release – California ("release") on November 11, 2002. The release states in pertinent part:

> . . . I release and discharge Praxair, Inc. . . . from all claims and causes of action whatsoever to the extent arising from my separation from employment. These include, but are not limited to, claims arising under the Age Discrimination in Employment Act and other federal, state, and local laws prohibiting age, race, sex, religious, national origin, handicap, or other discrimination. I am not releasing claims for my pension and other benefits payable in the ordinary course, *including but not limited to benefits under California workers compensation laws*,[5] or payment due under any prior agreement with or policy, plan or program of the Company and not granted me . . .

The release further provided that Mr. Rodriguez acknowledged that the release "is intended to include and discharge all claims that I do not know or suspect to exist at the time of execution of this document relating to my separation from employment." Pursuant to the release, Mr. Rodriguez acknowledged and understood that he had no less than 21 days to consider the release and to revoke it in writing within seven days of its execution.

Prior to signing the release, Mr. Rodriguez consulted with an attorney for legal advice about the release. Mr. Rodriguez declares that Ms. Singleton "called me numerous times to sign" the release and that he told her that "she was pressuring me to sign."

**Post-Severance Contact With Mr. Wilson**

In November 2002, Mr. Wilson informed Mr. Rodriguez of a potential new position in Mr. Wilson's division and in which Mr. Rodriguez might be interested. Mr. Wilson later indicated that he

---

[4]   Mr. Rodriguez characterizes the $23,000 payment as a "salary continuation."

[5]   Mr. Rodriguez inserted the italicized wording in his handwriting.

3

had cleared creation of the position with Ms. Singleton and needed to prepare a job description and to clear it with Mr. Wilson's supervisors. Mr. Rodriguez attributes Mr. Wilson as indicating on December 6, 2002, that Mr. Wilson received approval of senior management and Mr. Wilson's superior[6] for Mr. Rodriguez to return and that Mr. Wilson continued to prepare the job description. Mr. Rodriguez declares: "I considered this a formal job offer because in the past when I was promoted to or hired into a position, management would review the job description and the responsibilities upon making the offer and then later formalize it onto paper." Mr. Rodriguez further attributes Mr. Wilson as indicating that Mr. Wilson needed to consult with Ms. Singleton "to make it formal" and "that it was dependent on her." Mr. Rodriguez claims Ms. Singleton sabotaged his return to work and declares:

> My feelings of hopelessness were based on the negative attitude I received from her after leaving on disability. When I was trying to make the decision to either return or be medically severanced she told me that a severance was the only option. She was also pressuring me to sign the severance agreement, calling me a least half a dozen times. She had previously told me that the company was in no way obligated to take me back. She was telling me to forget about coming back.

Mr. Rodriguez further declares: "I believe [Ms. Singleton] did not want to bring me back because of my disability." Mr. Rodriguez points to Ms. Singleton's deposition testimony that she was aware that Mr. Rodriguez received mental health treatment.

According to Praxair, Mr. Wilson did not make a firm employment offer to Mr. Rodriguez. Praxair points to Mr. Rodriguez' testimony that he lacks evidence that Mr. Wilson spoke to Ms. Singleton:

> Q. Did Dave Wilson ever tell you that he actually did speak with Dena Singleton about your potential reemployment with Praxair?
>
> A. No, because I never spoke to him after that. He told me he was going to talk to her.
>
> Q. Do you have any information from any source that Dave Wilson actually did speak with Dena Singleton after November 11, 2002 about your potential reemployment with Praxair?
>
> . . .
>
> A. Well, other than knowing Dave Wilson, he told me he was going to do it. I

---

[6] Mr. Wilson reported directly to Janet Coffman ("Ms. Coffman"), Praxair's marketing vice president and who reported directly to Praxair's president.

|   |   |   |
|---|---|---|
| 1 |   | believed him. |
| 2 |   | . . . |
| 3 | Q. | Any other reason? |
| 4 | A. | No. |

Praxair points to Mr. Rodriguez' further deposition testimony:

> Q.  . . . But other than your familiarity and your prior relationship with Dave Wilson, and other than the fact that he said he was going to call Dena Singleton, you don't have any information that he actually did call Dena, right?
>
> A.  Well, no. I can't produce something that says he talked to her. But in my heart I know Dave talked to her because he told me he was going to, and Dave is a straight-shooter.

Praxair notes that it implemented a company-wide hiring freeze in November and December 2002 to prevent authorization or creation of the potential position which Mr. Wilson had discussed with Mr. Rodriguez.[7]  Mr. Wilson testified:

> We – we were told not to add additional employees to the corporate payroll, okay? The time period we're talking about is our annual budgetary time period; goes on for about three months, starts in September, usually concludes sometime in December, okay? It goes through a hierarchy of approval processes, okay? And we were told we're not hiring anybody corporately, and that's when the ball stopped rolling.
>
> In fact, a year later, two positions in the same group that I was intending to bring [Mr. Rodriguez] into were eliminated. So, there was no one hired and two positions were eliminated a year later.

Praxair further points to Ms. Coffman's deposition testimony:

> Q.  . . . when the president of Praxair Distribution, Inc. told you to hold steady, did you understand that that was a hiring freeze, at least for you organization?
>
> . . .
>
> A.  What I understood is that I was not going to be allowed to add any additional headcount to my group.
>
> Q.  And did you communicate that information to Dave Wilson?
>
> A.  Yes.
>
> . . .

---

[7]  To attempt to raise doubts as to a hiring freeze, Mr. Rodriguez points to Ms. Singleton's deposition testimony that she did not know if see saw a document regarding the hiring freeze.

Q. And the president of the company told you not to hire any headcount during . . . the budget preparation process for 2003, correct?

A. Correct.

Q. And part of the budget preparation process occurred in 2002, correct.

A. Absolutely.

According to Praxair, Mr. Rodriguez' mental health condition was neither a consideration nor factor as to Praxair's decision not to create the new position or not to hire Mr. Rodriguez for a potential position under Mr. Wilson. In her deposition, Ms. Singleton testified that she neither told Mr. Wilson not to rehire Mr. Rodriguez nor discouraged Mr. Wilson to rehire Mr. Rodriguez. According to Mr. Wilson, Ms. Singleton noted that Mr. Rodriguez' employment had been severed due to a "personal issue." Ms. Singleton testified that "we had a hiring freeze between November and December at the very least during that time period . . . [and Mr. Rodriguez'] management team all agreed that if there was an opportunity that was appropriate for him that they would be willing to hire him into that opportunity."

## Mr. Rodriguez' Claims

Mr. Rodriguez filed a September 9, 2003 complaint with the California Department of Fair Employment and Housing ("DFEH") to allege discrimination claims under the California Fair Employment and Housing Act ("FEHA"), Cal. Gov. Code, §§ 12900, et seq. More specifically, the DFEH complaint alleged that during November 12, 2002 to December 12, 2002, Mr. Rodriguez was denied employment and accommodation because of Mr. Rodriguez' "perceived and actual disabilities" and depression. DFEH issued Mr. Rodriguez a right-to-sue letter, and Mr. Rodriguez filed a state court action which was removed as this pending action.

In this action, Mr. Rodriguez' complaint alleges discrimination and FEHA claims. The gist of Mr. Rodriguez' claims is that Praxair failed to accommodate his mental health condition and retaliated against Mr. Rodriguez for seeking an accommodation. The complaint's first cause of action for wrongful termination in violation of public policy alleges that Praxair failed to afford Mr. Rodriguez' requested accommodation and terminated his employment because of his age (over 40 years) and disability (industrial injury, anxiety and depression). The complaint's second cause of action alleges Praxair retaliated against Mr. Rodriguez "based on requesting accommodation for disability" and

discriminated against Mr. Rodriguez due to his disability and age to violate FEHA. The complaint's third cause of action alleges further FEHA violation due to Praxair's retaliation against Mr. Rodriguez "based on his health condition by first refusing to accommodate his disability, and then by refusing to hire [Mr. Rodriguez]." The third cause of action references Praxair's failure to engage in a good faith interactive process to determine if Mr. Rodriguez' disability could be accommodated. The complaint's fourth cause of action alleges that Praxair violated Mr. Rodriguez' implied-in-fact contract to be dismissed only for good cause in light of his longevity of employment, promotions, raises and favorable performance reviews, and Praxair's policies and officials' statements of company practices.

For relief, the complaint seeks damages for emotional distress and loss of earnings and benefits, punitive damages, an injunction to reinstate his employment and not to further discriminate based on his age and/or disability, attorney fees, and prejudgment interest.

### Mr. Rodriguez' Agreement To Dismiss Claims

At Mr. Rodriguez' July 8, 2005 deposition, Mr. Rodriguez and his counsel agreed on the record to dismiss the complaint's first, second and fourth causes of action "entirely . . . with prejudice" as well as the third cause of action, except its FEHA failure to rehire claim based on conduct after Mr. Rodriguez signed the release on November 11, 2002. In short, Mr. Rodriguez and his counsel agreed to dismiss all wrongful termination claims and to pursue only failure to rehire claims.

In response to written discovery, Mr. Rodriguez admitted that the release discharged Praxair of liability for conduct prior to Mr. Rodriguez' November 11, 2002 signature of the release.

### DISCUSSION

### Summary Judgment/Adjudication Standards

F.R.Civ.P. 56(b) permits a party against whom a claim is asserted to seek "summary judgment in the party's favor upon all or any part thereof." Summary judgment/adjudication is appropriate when there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. F.R.Civ.P. 56(e); *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356 (1986); *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). The purpose of summary judgment/adjudication is to "pierce the pleadings and assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec.,* 475 U.S. at 586,

n. 11, 106 S.Ct. 1348; *International Union of Bricklayers v. Martin Jaska, Inc.*, 752 F.2d 1401, 1405 (9th Cir. 1985).

On summary judgment/adjudication, a court must decide whether there is a "genuine issue as to any material fact," not weigh the evidence or determine the truth of contested matters. F.R.Civ.P. 56(c); *Covey v. Hollydale Mobilehome Estates*, 116 F.3d 830, 834 (9th Cir. 1997); *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598 (1970); *Poller v. Columbia Broadcast System*, 368 U.S. 464, 467, 82 S.Ct. 486 (1962); *Loehr v. Ventura County Community College Dist.*, 743 F.2d 1310, 1313 (9th Cir. 1984). The evidence of the party opposing summary judgment/adjudication is to be believed and all reasonable inferences that may be drawn from the facts before the court must be drawn in favor of the opposing party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505 (1986); *Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348. The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-252, 106 S.Ct. 2505.

To carry its burden of production on summary judgment/adjudication, a moving party "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000); *see High Tech Gays v. Defense Indus. Sec. Clearance Office*, 895 F.2d 563, 574 (9th Cir. 1990). "[T]o carry its ultimate burden of persuasion on the motion, the moving party must persuade the court that there is no genuine issue of material fact." *Nissan Fire*, 210 F.3d at 1102; *see High Tech Gays*, 895 F.2d at 574. "As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505.

"If a moving party fails to carry its initial burden of production, the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial." *Nissan Fire*, 210 F.3d at 1102-1103; *See Adickes*, 398 U.S. at 160, 90 S.Ct. 1598. "If, however, a moving party carries its burden of production, the nonmoving party must produce evidence to support its claim or defense." *Nissan Fire*, 210 F.3d at 1103; *see High Tech Gays*, 895 F.2d

at 574.  "If the nonmoving party fails to produce enough evidence to create a genuine issue of material fact, the moving party wins the motion for summary judgment." *Nissan Fire*, 210 F.3d at 1103; *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548 (1986) ("Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make the showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.") "But if the nonmoving party produces enough evidence to create a genuine issue of material fact, the nonmoving party defeats the motion." *Nissan Fire*, 210 F.3d at 1103; *see Celotex*, 477 U.S. at 322, 106 S.Ct. 2548.  "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (quoting *First Nat'l Bank v. Cities Service Co.*, 391 U.S. 253, 288-289, 88 S.Ct. 1575, 1592 (1968)).  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505.

Under F.R.Civ.P. 56(c), a summary judgment/adjudication motion, interlocutory in character, may be rendered on the issue of liability alone.  "In cases that involve . . . multiple causes of action, summary judgment may be proper as to some causes of action but not as to others, or as to some issues but not as to others, or as to some parties, but not as to others." *Barker v. Norman*, 651 F.2d 1107, 1123 (5th Cir. 1981); *see also Robi v. Five Platters, Inc.*, 918 F.2d 1439 (9th Cir. 1990); *Cheng v. Commissioner Internal Revenue Service*, 878 F.2d 306, 309 (9th Cir. 1989).

As discussed below, Mr. Rodriguez has failed to raise a genuine issue of material fact regarding his remaining failure to rehire claims, and Praxair has demonstrated an absence of evidence for elements of Mr. Rodriguez' remaining failure to rehire claims.

**Release**

Praxair contends that Mr. Rodriguez' execution of the release bars all of his claims except those arising from failure to rehire after he signed the release on November 11, 2002.  Praxair explains that the release bars all but the failure to rehire claims in that the non-rehire claims arise "directly" from Mr. Rodriguez' employment or separation from employment.  Praxair points out that Mr. Rodriguez and his counsel concede as much with their offer to dismiss all but failure to rehire claims.

1    California Civil Code section 1541 provides: "An obligation is extinguished by a release therefrom given to the debtor by the creditor, upon a new consideration, or in writing, with or without new consideration." Generally, "a written release extinguishes any obligation covered by the release's terms, provided it has not been obtained by fraud, deception, misrepresentation, duress or undue influence." *Skrbina v. Fleming Companies, Inc.*, 45 Cal.App.4th 1353, 1366, 53 Cal.Rptr.2d 481 (1996) (general release of employment law claims included FEHA claims); *see Linsley v. Twentieth Century Fox Film Corp.*, 75 Cal.App.4th 762, 769, 89 Cal.Rptr.2d 429 (1999) ("A release of unlawful discrimination claims under the FEHA under the circumstances present here was fully enforceable."); *Pampillonia v. RJR Nabisco, Inc.*, 138 F.3d 459, 463 (2nd Cir. 1998) ("Accordingly, we hold that the release is unambiguous, was knowingly and voluntarily entered into, and therefore bars the plaintiff from bringing the present action."); *Bledsoe v. Palm Beach Cty. Soil & Water Conserv.*, 133 F.3d 816, 819 (11th Cir. 1998) ("an employee can waive his 'cause of action under Title VII as part of a voluntary settlement agreement' if 'the employee's consent to the settlement was voluntary and knowing.'")

With the release, Mr. Rodriguez discharged Praxair of all claims "arising from my separation from employment," including federal and state discrimination claims. The release preserved Mr. Rodriguez' pension, benefits and workers compensation claims. The complaint's first, second and fourth causes of action address Mr. Rodriguez' alleged wrongful termination under varying theories. As such, these causes of action arise from Mr. Rodriguez' "separation from employment" and are subject to the release given the absence of evidence of fraud, deception, misrepresentation, duress or undue influence. The third cause of action includes pre- and post-severance claims. Plaintiff and his counsel conceded at Mr. Rodriguez' deposition and in response to written discovery that only the post-severance claims survive, that is, those claims arising from failure to rehire Mr. Rodriguez after he signed the release on November 11, 2002. In his opposition papers, Mr. Rodriguez does not dispute that only his post-severance claims survive. As such, the release bars all claims but the post-November 11, 2002 failure to rehire claims.

### Merits Of Mr. Rodriguez' Failure To Rehire Claim

*Prima Facie Case Of Disability Discrimination*

With the release barring Mr. Rodriguez' pre-severance claims, this Court turns to the third cause

of action's claim that Praxair violated FEHA by failing to rehire Mr. Rodriguez because of his mental health condition. FEHA declares "as a public policy of this state that it is necessary to protect and safeguard the right and opportunity of all persons to seek, obtain, and hold employment without discrimination or abridgment on account of . . . physical disability, mental disability, medical condition . . ." Cal. Gov. Code, § 12920. California Government Code section 12940(a) provides it is unlawful: "For an employer, because of . . . physical disability, mental disability, medical condition . . . to refuse to hire or employ the person . . . or to bar or to discharge the person from employment . . . or to discriminate against the person in compensation or in terms, conditions, or privileges of employment."

Disparate treatment claims have shifting burdens of proof. A plaintiff has the initial burden to prove by a preponderance of evidence a prima facie case of disparate treatment, that is, a plaintiff must offer evidence that "give[s] rise to an inference of unlawful discrimination." *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089 (1981); *see St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506, 113 S.Ct. 2742, 2746-2747 (1993). This may be accomplished with direct evidence of discriminatory intent. *Vasquez v. County of Los Angeles*, 349 F.3d 634, 640 (9th Cir. 2003). "'Direct evidence is evidence which, if believed, proves the fact [of discriminatory animus] without inference or presumption.'" *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1221 (9th Cir. 1988) (quoting *Davis v. Chevron, U.S.A., Inc.*, 14 F.3d 1082, 1085 (5th Cir. 1994)).

A plaintiff may also establish a prima facie case of disability discrimination through circumstantial evidence. To do so, the plaintiff must show that he/she:

1. Suffers from a disability;
2. Is a qualified individual; and
3. Was subjected to adverse employment action because of the disability.

*Brundage v. Hahn*, 57 Cal.App.4th 228, 236, 66 Cal.Rptr.2d 830, 835 (1997); *see McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802; 93 S.Ct. 1817 (1973);*Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 891 (9th Cir. 1994); *Cassino v. Reichhold Chemicals, Inc.*, 817 F.2d 1338, 1343 (9th Cir. 1987), *cert. denied*, 484 U.S. 1047, 108 S.Ct. 785 (1988).

"The burden of establishing a prima facie case of disparate treatment is not onerous." *Burdine*, 450 U.S. at 253, 101 S.Ct. 1089. At summary judgment/adjudication, the "requisite degree proof

1  necessary to establish a *prima facie* case . . . is minimal and does not even need to rise to the level of
2  preponderance of the evidence." *Wallis*, 26 F.3d at 889.

3  If plaintiff establishes a prima facie case, the burden shifts to the employer "to articulate some
4  legitimate, nondiscriminatory reason" for adverse employment action. *McDonnell Douglas Corp.,* 411
5  U.S. at 802, 93 S.Ct. 1817; *Burdine*, 450 U.S. at 252-253, 101 S.Ct. at 1094-1095; *Coleman v. Quaker*
6  *Oats Co.*, 232 F.3d 1271, 1281 (9th Cir. 2000), *cert. denied*, 533 U.S. 950, 121 S.Ct. 2592 (2001); *Guz*,
7  24 Cal.4th at 355-356, 100 Cal.Rptr. at 379; *Brundage*, 57 Cal.App. 4th at 228, 66 Cal.Rptr.2d at 835.
8  If the employer presents admissible evidence that one of more of plaintiff's prima facie elements is
9  lacking or that the adverse employment action was based on legitimate, nondiscriminatory factors, the
10 employer is entitled to summary judgment/adjudication unless the plaintiff produces admissible evidence
11 to raise a triable issue of fact material as to the employer's showing. *Caldwell v. Paramount Unified*
12 *School District*, 41 Cal.App.4th 189, 203, 48 Cal.Rptr.2d 448, 457 (1995).  If the employer carries its
13 burden, plaintiff must have an opportunity to prove by a preponderance of evidence that the legitimate
14 reasons offered by the employer were not its true reasons but were a pretext for discrimination.
15 *McDonnell Douglas*, 411 U.S. at 804; 93 S.Ct. 1817; *Burdine*, 450 U.S. at 253, 101 S.Ct. 1089; *see*
16 *Brundage*, 57 Cal.App. 4th at 228, 66 Cal.Rptr.2d at 835.

17 Despite the burden shifting, the ultimate burden of proof remains always with the plaintiff to
18 show that the employer intentionally discriminated because of the plaintiff's disability. *See  Burdine*,
19 450 U.S. at 253, 101 S.Ct. 1089; *Coleman*, 232 F.3d at 1281; *Rose v. Wells Fargo & Co.*, 902 F.2d 1417,
20 1420-1421 (9th Cir. 1990).  By applying the shifting burdens of production in the summary judgment
21 context, "the judge [will] determine whether the litigants have created an issue of fact to be decided by
22 the jury." *Burdine*, 450 U.S. at 255, n. 8, 101 S.Ct. at 1094, n. 8.

23 Praxair contends that Mr. Rodriguez cannot establish a prima facie claim for disability
24 discrimination because he lacks evidence that Praxair's failure to rehire him was based on alleged
25 disability.  Praxair argues that Mr. Rodriguez' failure to rehire claim is based on Mr. Rodriguez'
26 speculation that Ms. Singleton instructed Mr. Wilson not to rehire Mr. Rodriguez or discouraged Mr.
27 Wilson to rehire Mr. Rodriguez.  Praxair points out that Mr. Wilson did not extend Mr. Rodriguez a
28 rehire offer because of Praxair's company-wide hiring freeze, which prevented creation of Mr.

Rodriguez' potential position. Praxair notes that Ms. Singleton, Mr. Wilson and Ms. Coffman testified that Mr. Rodriguez was not rehired because of Praxair's hiring freeze, not Mr. Rodriguez' mental health condition. Ms. Singleton further testified that she neither told Mr. Wilson not to rehire Mr. Rodriguez nor discouraged Mr. Wilson to rehire Mr. Rodriguez.

Mr. Rodriguez argues that he establishes a prima facie disability discrimination claim. As to the first two prima facie elements of disability discrimination, Mr. Rodriguez notes that he has suffered depression and was given temporary disability leave. Mr. Rodriguez claims that medication improved his condition so that he could perform the position contemplated by Mr. Wilson. Praxair does not contest the first two elements of the prima facie case (disability and qualified individual). Praxair focuses on whether Mr. Rodriguez was subjected to an adverse employment action because of disability. Praxair argues Mr. Rodriguez fails to establish the third element of the prima facie case in the absence of "direct or circumstantial evidence sufficient to raise a reasonable inference that he was not re-hired by Praxair because of his disability." (Underlining in original.)

Mr. Rodriguez contends that he was subjected to adverse employment action in that Ms. Singleton "showed hostility" toward him during his disability leave, severance and rehire attempt. As to Ms. Singleton's alleged hostility, Mr. Rodriguez points to Ms. Singleton's:

1. Awareness of Mr. Rodriguez' temporary medical leave and mental health treatment;
2. Presence at a meeting where Mr. Rodriguez requested a lighter work load;
3. Denial of Mr. Rodriguez' request that his daughter attend a meeting regarding his condition;
4. Failure to assist Mr. Rodriguez to find a job with Praxair which he could do with accommodation;
5. Half dozen telephone calls to inquire whether Mr. Rodriguez had signed the release;
6. Failure to facilitate Mr. Rodriguez prompt payment of wages and vacation pay upon severance; and
7. Comment to Mr. Wilson that Mr. Rodriguez' severance involved a "personal issue."

Based on such conduct of Ms. Singleton, Mr. Rodriguez concludes that a jury "could reasonably conclude" her actions were hostile.

1    Inquiry whether employment action is adverse requires a case-by-case determination based upon
2 objective evidence. *Blackie v. State of Maine*, 75 F.3d 716, 725 (1st Cir. 1996). A plaintiff's displeasure
3 "by an employer's act or omission does not elevate that act or omission to the level of a materially
4 adverse employment action." *Blackie*, 75 F.3d at 725.

5    Mr. Rodriguez' approach to attempt to establish adverse employment action based on disability
6 is confusing. Mr. Rodriguez mixes pre- and post-severance (November 11, 2002) events to attempt to
7 demonstrate disability discrimination not to rehire him. Mr. Rodriguez fails to demonstrate adverse
8 employment action (failure to rehire) based on Ms. Singleton's awareness of Mr. Rodriguez' mental
9 health condition, attendance at a meeting, denial of his daughter's attendance at a meeting, telephone
10 calls regarding the release, failure to facilitate prompt final payment of wages and vacation pay, and
11 "personal issue" comment. Most of such purported conduct arose prior to November 11, 2002, is subject
12 to the release, and is at best collateral to the issues remaining in this action. As noted by Praxair, Mr.
13 Rodriguez speculates as to effects of Ms. Singleton's knowledge of his condition, and such speculation,
14 without more, fails to raise a sufficient factual issue as to adverse employment action.

15    As for Ms. Singleton's alleged failure to assist Mr. Rodriguez' return, Mr. Rodriguez points to
16 Mr. Wilson's deposition testimony:

17   Q.   And so, [Ms. Singleton] told you that [Mr. Rodriguez] was no longer with the company and had certain private issues; is – is that fair?
18
     A.   Yes.
19
     Q.   Okay. Do you recall any words that you had for her at that time?
20
21   A.   I recall that I very strongly communicated to her that I wanted to employ [Mr. Rodriguez], and I wanted her to do whatever was necessary to help me do that. And I think that meant – well, I don't know what it meant, but doing some sort
22        of reverse severance . . . for lack of a better term.

23   Q.   Do you recall her response, Ms. Singleton's?

24   A.   Her response was it's – I don't recall exact words, but it was something to the effect of, you know, "There's some complication in doing that, let me find out
25        what I need to do," and she proceeded to do that.

26        . . .

27   A.   [Ms. Singleton] had some concern with it because of, you know, what she described as a "private issue." She did not, you know, disclose much of what
28        that issue was. I – I recall her describing it as a "private issue."

1  Q. Okay.

2  A. And, you know, "Are you sure you want to do this?"

3  And I said, "Yeah." And I went through all the reasons that, most of which I have communicated to you, and [Ms. Singleton] proceeded to start doing whatever she needed
4  to do.

5  Q. To get the ball rolling?

6  A. To get the ball rolling.

Mr. Rodriguez' evidence fails to raise a factual issue that Ms. Singleton's alleged failure to accommodate Mr. Rodriguez equated to adverse employment action.

Ms. Singleton's telephone calls to inquire whether Mr. Rodriguez signed the release fail to assist Mr. Rodriguez to demonstrate adverse employment action. Mr. Rodriguez ultimately signed the release after consulting an attorney and included language to preserve workers compensation claims.

The third factor of Mr. Rodriguez' prima facie case rises or falls on Ms. Singleton's conduct. The inference most favorable to Mr. Rodriguez from the evidence is that Ms. Singleton apprised Mr. Wilson of Mr. Rodriguez' personal issue and questioned Mr. Wilson whether he wished to continue with Mr. Rodriguez' potential rehire. Mr. Rodriguez notes that he had informed Mr. Wilson of his prior job problems to render immaterial Ms. Singleton's "personal issue" comment. There is no evidence – direct or indirect – that Ms. Singleton poisoned the well post-severance and in turn, that Mr. Rodriguez, post-severance, was subjected to adverse action because of a disability. According to Mr. Wilson, Ms. Singleton investigated Mr. Rodriguez' potential rehire. In the absence of evidence of or a factual issue regarding adverse employment action, Mr. Rodriguez fails to establish a prima facie case.

### *Pretext*

Praxair contends that its hiring freeze was a legitimate, non-discriminatory reason to prevent Mr. Rodriguez' rehire. Praxair argues that Mr. Rodriguez lacks evidence to demonstrate that the hiring freeze was a pretext to discriminate based on Mr. Rodriguez' mental health condition. Praxair points to Mr. Rodriguez' deposition testimony that he lacks evidence that Ms. Singleton talked to Mr. Wilson about a potential position.

A plaintiff may establish pretext "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered

explanation is unworthy of credence." *Burdine*, 450 U.S. at 256, 101 S.Ct. 1089. "[A] plaintiff at the pretext stage must produce evidence in addition to that which was sufficient for her prima facie case in order to rebut the defendant's showing." *Godwin*, 150 F.3d at 1220; *see Wallis*, 26 F.3d at 890. "When the plaintiff offers direct evidence of discriminatory motive, a triable issue as to the actual motivation of the employer is created even if the evidence is not substantial." *Godwin*, 150 F.3d at 1221.

In the absence of direct evidence, "the plaintiff must come forward with circumstantial evidence that tends to show that the employer's proffered motives were not the actual motives because they are inconsistent or otherwise not believable." *Godwin*, 150 F.3d at 1222. The Ninth Circuit Court of Appeals has explained:

> In response to the defendant's offer of nondiscriminatory reasons, the plaintiff must produce "specific, substantial evidence of pretext." *Steckl v. Motorola, Inc.*, 703 F.2d 392, 393 (9th Cir. 1983). In other words, the plaintiff "must tender a genuine issue of material fact as to pretext in order to avoid summary judgment." *Id.*

*Wallis*, 26 F.3d at 890-891 (addressing age discrimination).[8]

A plaintiff must demonstrate "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them 'unworthy of credence,' [citation], and hence infer 'that the employer did not act for the [asserted] non-discriminatory reasons.' [citations.]" *Fuentes v. Perksie*, 32 F.3d 759, 765 (3rd Cir. 1994); *Sheridan v. E.I. DuPont de Nemours and Co.*, 100 F.3d 1061, 1072 (3rd Cir. 1996), *cert. denied*, 521 U.S. 1129, 117 S.Ct. 2532 (1997); *Stewart v. Rutgers, The State University*, 120 F.3d 426 (3rd Cir. 1997). "If a plaintiff succeeds in raising a genuine factual issue regarding the authenticity of the employer's stated motive, summary judgment is inappropriate because it is for the trier of fact to decide which story is to be believed." *Washington v. Garrett*, 10 F.3d 1421, 1433 (9th Cir. 1993). A "disparate treatment plaintiff can survive summary judgment without producing any evidence of discrimination beyond that constituting his prima facie case, if that evidence raises a genuine issue of

---

[8] California courts have held that to avoid summary judgment, a plaintiff must offer substantial evidence that the employer's stated non-discriminatory reason for the adverse action was untrue or pretextual, or that the employer acted with a discriminatory animus, or combination of the two, such that a reasonable trier of fact could conclude the employer engaged in intentional discrimination. *Guz*, 24 Cal.4th at 357, 100 Cal.Rptr.2d 353; *Hersant v. Department of Social Services*, 57 Cal.App.4th 997, 1004, 67 Cal.Rptr.2d 483 (1997).

material fact regarding the truth of the employer's proffered reasons." *Chuang*, 225 F.3d at 1127. A factual issue can be created only by "a conflict of evidence," not "by speculation or conjecture." *Horn v. Cushman & Wakefield Western, Inc.*, 72 Cal.App.4th 798, 807, 85 Cal.Rptr.2d 459 (1999).

Praxair's rationale not to rehire Mr. Rodriguez is a November and December 2002 hiring freeze. Inquiry is limited to "whether the employer gave an honest explanation of its behavior." *Pollard v. Rea Magnet Wire Co.,* 824 F.2d 557, 560 (7th Cir.), *cert. denied*, 484 U.S. 977, 108 S.Ct. 488 (1997). Mr. Rodriguez contends the hiring freeze is a pretext based on:

1. Ongoing discussions among Ms. Singleton, Mr. Wilson and management to return Mr. Rodriguez for an "appropriate" job;
2. Mr. Rodriguez' discussions with Mr. Wilson regarding a potential position during the hiring freeze;
3. Absence of management discussions of a hiring freeze during discussions regarding a potential position for Mr. Rodriguez; and
4. Ms. Singleton's failure to point to documentation of the hiring freeze.

As such, Mr. Rodriguez claims that there is "an inference of discrimination sufficient to survive summary judgment" and that a jury could find the hiring freeze explanation "implausible."

As noted above, Mr. Rodriguez has failed to offer direct evidence of a disability discriminatory motive and relies on inferences, not even circumstantial evidence. The evidence reveals that:

1. Near the time of Mr. Rodriguez' severance, Mr. Wilson discussed a "potential" position for Mr. Rodriguez;
2. Internal Praxair discussions proceeded whether a position was appropriate for Mr. Rodriguez;
3. The internal process stopped based on what Praxair characterizes as a hiring freeze; and
4. Mr. Rodriguez was not extended an offer.

Mr. Rodriguez offers no specific, substantial evidence to question a hiring freeze.[9] Although ideally for Praxair it would have documented a hiring freeze, Ms. Singleton, Mr. Wilson and Ms. Coffman

---

[9] The deposition testimony which Mr. Rodriguez belatedly provided fails to raise a factual issue regarding a hiring freeze and indicates Mr. Rodriguez' potential position was "canceled" by the freeze.

acknowledged the hiring freeze. Mr. Rodriguez offers nothing to challenge their credibility. Mr. Rodriguez' most favorable evidence is discussions of a "potential" position during the hiring freeze. Mr. Rodriguez presents no evidence that the position was created and authorized by Praxair management. Mr. Wilson noted that the potential position for Mr. Rodriguez has never filled. In the absence of such evidence, Mr. Rodriguez fails to demonstrate an implausibility or inconsistency in the hiring freeze explanation. Using the words of Mr. Wilson, the "ball got rolling" but stopped. Based on the evidence, the process to create a position started but stopped. Mr. Rodriguez fails to raise a genuine factual issue regarding a hiring freeze.

## CONCLUSION AND ORDER

For the reasons discussed above, this Court:

1. GRANTS Praxair summary judgment;
2. DIRECTS this Court's clerk to enter judgment in favor of defendant Praxair Distribution, Inc. and against plaintiff Robert Rodriguez; and
3. VACATES the March 1, 2006 pretrial conference and April 10, 2006 trial.

IT IS SO ORDERED.

**Dated:   February 7, 2006**             /s/ Lawrence J. O'Neill
66h44d                                   UNITED STATES MAGISTRATE JUDGE